1  ROBERT E. OPERA -- State Bar No. 101182
   ropera@winthropcouchot.com
2  KAVITA GUPTA – State Bar No. 138505
   kgupta@winthropcouchot.com
3  **WINTHROP COUCHOT**
4  **PROFESSIONAL CORPORATION**
   660 Newport Center Drive, Suite 400
5  Newport Beach, CA 92660
6  Telephone: (949) 720-4100
   Facsimile: (949) 720-4111
7
   [Proposed] General Insolvency Counsel for
8  Debtors and Debtors-in-Possession
9
10                     UNITED STATES BANKRUPTCY COURT
11                      CENTRAL DISTRICT OF CALIFORNIA
12                            SANTA ANA DIVISION
13

| | |
|---|---|
| 14  In re:  | Case No. 8:11-bk-11428 RK |
| 15  ☒ FORBCO MANAGEMENT | Jointly Administered with Case Nos. |
| 16  CORPORATION, a California corporation | 8:11-bk-11439 RK; 8:11-bk-11442 RK; |
|     ☒ FORBCO SIZZLER PARTNERS, L.P. | 8:11-bk-11444 RK |
| 17  a California limited partnership | |
|     ☒ W & J HIGGINS INVESTMENTS L.P., a | Chapter 11 Proceedings |
| 18  California limited partnership | |
| 19  ☒ L & G RESTAURANTS, LLC, | **DEBTORS' <u>EMERGENCY</u> MOTION FOR** |
|     a California limited liability company | **ORDER AUTHORIZING (1) PAYMENT** |
| 20  | **OF PRE-PETITION PAYROLL; AND** |
|     | **(2) RETENTION OF ACCOUNT USED TO** |
| 21  Debtors and | **FUND PRE-PETITION PAYROLL;** |
|     Debtors-in-Possession. | **MEMORANDUM OF POINTS AND** |
| 22  | **AUTHORITIES** |
| 23  | |
|     | **[DECLARATION OF RONALD JEFFREY** |
| 24  | **HIGGINS IN SUPPORT THEREOF** |
|     | **FILED CONCURRENTLY HEREWITH]** |
| 25  | |
| 26  | DATE:    February 11, 2011 |
|     | TIME:    9:30 a.m. |
| 27  | PLACE:   Courtroom 5D |
| 28  | |

1    Forbco Management Corporation, a California corporation ("Forbco Management"); Forbco Sizzler Partners, L.P., a California limited partnership ("Forbco Sizzler"); W&J Higgins Investments, L.P., a California limited partnership ("W&J"); and L&G Investments, LLC, a California limited liability company ("L&G"), the jointly administered debtors and debtors-in-possession in the above-captioned Chapter 11 proceedings (collectively, "Debtors"), hereby move ("Motion") the Court, on an emergency basis, for an order authorizing the Debtors (i) to pay pre-petition non-insider employee wages and salaries, and employee expense reimbursements and other related employer obligations, up to the priority limit set forth in Section 507(a)(4) of the Bankruptcy Code; (ii) the right to pay for accrued vacation and sick day obligations during the case as they are taken in the ordinary course, without respect to the priority limitation, and (iii) to retain an account on which pre-petition payroll was funded, through and including February 28, 2011, in order to minimize the risk that pre-petition payroll checks written on such account will be dishonored.

    The Debtors operate fourteen (14) "Sizzler" restaurants located in Southern California. The Debtors' businesses are labor and management intensive. To maintain the Debtors' post-petition operations and to preserve the value of the Debtors' businesses, the Debtors must retain their existing employees. To achieve this objective, the Debtors must pay the pre-petition wages and related obligations payable to this critical constituency on a timely basis. These payrolls include pre-petition obligations owed to employees. Accordingly, unless the Debtors can obtain emergency relief from this Court, the Debtors' employees will not receive timely their wages, resulting in substantial, and perhaps irreparable, damage to the Debtors' business enterprises.

    This Motion is made and based upon the foregoing allegations and representations, the Memorandum of Points and Authorities and the Declaration of Ronald Jeffrey Higgins ("Higgins Declaration") filed concurrently herewith, the papers, pleadings and other documents on file in the

/ / /

1 | Debtors' Chapter 11 cases, and upon such other evidence, both oral and documentary, that may be
2 | submitted to the Court at or before the time of the hearing on this Motion.

3 | DATED: February 9, 2011

**WINTHROP COUCHOT
PROFESSIONAL CORPORATION**

By: _/s/ Robert E. Opera_
    Robert E. Opera
    Kavita Gupta
[Proposed] General Insolvency Counsel for
Debtors and Debtors-in-Possession

-3-

MAINDOCS-#157618-v2-Forbco_Payroll_Motion.DOC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**A.    Description of the Debtors.** The Debtors own and operate fourteen (14) Sizzler restaurants in Southern California. Each Debtor owns four restaurants, with the exception of L&G, which owns two restaurants. The Debtors' business affairs are administered, in part, by Forbco Management, which was founded by Ronald F. Higgins in 1972, and which is now owned and controlled by him and his son, Ronald Jeffrey Higgins, who serves as Forbco Management's President. A description of the Debtors is set forth in the following subparagraphs.

        1.    **Forbco Management.** Forbco Management operates Sizzler restaurants from the following leased locations:

| | |
|---|---|
| Store No. 3 | 730 S. Arroyo Parkway, Pasadena, CA 91105 |
| Store No. 12 | 900 N. Citrus Avenue, Covina, CA 91722 |
| Store No. 14 | 9480 Warner Avenue, Fountain Valley, CA 92708 |
| Store No. 15 | 2228 S. Mountain Avenue, Ontario, CA 91761 |

In addition to these operating locations, Forbco Management leases office space for its headquarters facility that is located at 27121 Towne Centre Drive, Suite 250, Foothill Ranch, CA 92610-2806.

Forbco Management generated approximately $194,000 in earnings before interest, depreciation and amortization ("EBITDA"), on revenues of approximately $5.0 million, during the twelve month period ending on December 26, 2010.

Forbco Management employs approximately 110 people in the ordinary course of its business. Substantially all of these employees provide services at Forbco Management's four restaurants (cooks, servers, waiters and waitresses, etc.). Those Forbco Management employees who are not employed in Forbco Management's restaurants are employed in Forbco Management's corporate office and provide services that are essential to the continuance of the Debtors' operations, such as management, accounting and bookkeeping services. None of these employees will be paid a sum in excess of the $11,725 statutory priority limit set forth in Section 507(a)(4) of

-1-

1  the Bankruptcy Code, except for accrued vacation and sick days where such days are taken by
2  existing employees, who remain employed, in the ordinary course.
3        2.   **Forbco Sizzler.** Forbco Management operates Sizzler restaurants from the
4  following leased locations:

| Store No. 24 | 101 N. Village Court, San Dimas, CA 91733 |
| Store No. 25 | 9588 Baseline Road, Rancho Cucamonga, CA 91701 |
| Store No. 30 | 6631 Clay Street, Pedley, CA 92509 |
| Store No. 37 | 900 E. Alosta Avenue, Azusa, CA 91702 |

9        Forbco Sizzler generated approximately $124,000 in EBITDA, on revenues of
10 approximately $5.4 million, during the twelve month period ending on December 26, 2010.
11 Financial statements for Forbco Sizzler are attached, collectively, as Exhibit "2" to the Higgins
12 Declaration.
13       Forbco Sizzler employs approximately 110 people in the ordinary course of its
14 business. None of these employees will be paid a sum in excess of the $11,725 statutory priority
15 limit set forth in Section 507(a)(4) of the Bankruptcy Code, except for accrued vacation and sick
16 days where such days are taken by existing employees, who remain employed, in the ordinary
17 course.
18       3.   **W&J.** W&J operates Sizzler restaurants from the following leased
19 locations:

| Store No. 102 | 15 West Del Amo Blvd., Long Beach, CA 90805 |
| Store No. 105 | 20755 South Avalon Blvd., Carson, CA 90746 |
| Store No. 108 | 33002 Yucaipa Blvd., Yucaipa, CA 92399 |
| Store No. 135 | 1461 South Rimpau Corona, CA 92879 |

24       W&J generated approximately $232,000 in EBITDA, on revenues of $4.8 million,
25 during the twelve month period ending on December 26, 2010. Financial statements for W&J are
26 attached, collectively, as Exhibit "3" to the Higgins Declaration.
27       W&J employs approximately 110 people in the ordinary course of its business.
28 None of these employees will be paid a sum in excess of the $11,725 statutory priority limit set

-2-

1 | forth in Section 507(a)(4) of the Bankruptcy Code, except for accrued vacation and sick days where such days are taken by existing employees, who remain employed, in the ordinary course.

4. **L&G**. L&G operates Sizzler restaurants from the following leased locations:

| Store No. 205 | 3755 Murphy Canyon Road, San Diego, CA 92123 |
| Store No. 225 | 4017 E. Main Street, Ventura, CA 90003 |

L&G generated approximately $106,000 in EBITDA, on revenues of $2.7 million, during the twelve month period ending on December 26, 2010. Financial statements for L&G are attached, collectively, as Exhibit "4" to the Higgins Declaration.

L&G employs approximately 60 people in the ordinary course of its business. None of these employees will be paid a sum in excess of the $11,725 statutory priority limit set forth in Section 507(a)(4) of the Bankruptcy Code, except for accrued vacation and sick days where such days are taken by existing employees, who remain employed, in the ordinary course.

B. **The Relief Sought by This Motion**. The Debtors owe pre-petition employment-related obligations to their employees. These obligations include pre-petition payroll obligations, wages, salaries, vacation pay, sick leave pay, and other paid leave, federal, state and local payroll tax obligations, deductions and withholdings, payroll deductions relating to various benefits, reimbursement of business expenses (including, without limitation, travel expense) and benefit claims asserted by current employees (including, without limitation, worker's compensation, medical insurance, dental insurance, life insurance, and miscellaneous other benefits).

By this Motion, the Debtors request authority to pay the pre-petition wage and employment-related claims of their employees up to the statutory priority limit set forth in Section 507(a)(4) of the Bankruptcy Code. The Debtors will not pay any pre-petition wage or employment-related claims in excess of the $11,725 statutory priority limit set forth in Section 507(a)(4) of the Bankruptcy Code, except, as indicated, where accrued vacation is taken by and employee in the ordinary course.

Although payments to insiders (Ronald F. Higgins and Ronald Jeffrey Higgins) will be authorized by this motion, no actual payments will be made to the insiders until their insider

1 compensation requests are approved. The Debtors also request authority to honor, post-petition as
2 the Debtors deem appropriate, the pre-petition benefit claims of employees.
3     As set forth in the Higgins Declaration, the Debtors project that they will have funds
4 sufficient to pay timely all pre-petition obligations which they request hereby authority to pay.
5 Copies of the Debtors' Cash Flow Projections for the first 26 weeks after the filing of the Debtors'
6 Chapter 11 petitions are attached, collectively, as Exhibit "6" to the Higgins Declaration.
7     **C.    The Critical Need For Immediate Relief**. The Debtors' businesses are labor and
8 management intensive. Each and every day, the Debtors' employees provide cooking and dining
9 related services to hundreds of customers at fourteen separate locations. Additionally, the Debtors'
10 staff provides the Debtors' restaurants both onsite and offsite management services that are
11 essential to the continued operations of these restaurants. If the pre-petition wage and benefit
12 obligations owed to the Debtors' employees are not timely paid, the employees will suffer severe
13 financial hardship and numerous employees will terminate their employment with the Debtors,
14 severely damaging the Debtors' operations.
15     **D.    The Relief Herein Will Benefit All Creditors**. Although the claims that the
16 Debtors propose to pay are pre-petition claims, the payment of these claims will enable the
17 Debtors' businesses to continue in operation. The relief requested hereby, then, will preserve the
18 Debtors' going concern value and will preserve the Debtors' businesses as a future source of
19 creditor payments. In contrast, if the relief requested hereby is not granted, numerous employees
20 of the Debtors will defect, the Debtors' businesses will grind to a halt, and the Debtors' customers
21 will seek replacement dining options. Such a result would destroy the enterprise value of the
22 Debtors, to the severe detriment of the Debtors' creditors.
23                                    II.
24                **RELIEF IS JUSTIFIED ON AN EMERGENCY BASIS**
25     Courts have consistently recognized that emergency relief on "first-day" motions relating to
26 cash collateral and pre-petition wage payments is necessary after a case is filed. See, In re Center
27 Wholesale, Inc., 759 F.2d 1440, 1444 (9th Cir 1985) ("We realize that 'in certain circumstances
28 the entire reorganization effort may be thwarted if emergency relief is withheld' and that

-4-

MAINDOCS-#157618-v2-Forbco_Payroll_Motion.DOC

1   reorganization under the Bankruptcy Code 'is a perilous process, seldom more so than at the outset
2   of the proceedings when the debtor is often without sufficient cash flow to fund essential business
3   operations.' ... It is for this very reason that Congress specified that hearings concerning the use
4   of cash collateral 'shall be scheduled in accordance with the needs of the debtor.'"); In re Sullivan
5   Ford Sales, 2 B.R. 350, 355 (Bankr. D.Me. 1980).  See also, Rule 2081-1 of the Local Bankruptcy
6   Rules.
7           The Debtors operate fourteen (14) Sizzler restaurants.  The Debtors' businesses are very
8   management and labor intensive.  It is critical to the Debtors' reorganization efforts that the
9   Debtors pay, in the ordinary course, the pre-petition wage claims of the Debtors' employees.  As
10  stated in the Higgins Declaration, the Debtors believe that any delay in the Debtors' paying their
11  payroll obligations to employees will cause severe financial hardship for many, if not most, of the
12  Debtors' employees, a significant percentage of whom likely live on a paycheck-to-paycheck basis.
13  If the Debtors cannot pay timely their payroll obligations to their employees, it is very likely that
14  numerous employees will defect.  Many of the Debtors' employees have worked for the Debtors
15  for a significant period of time and/or have skills that are essential to the ongoing operations of the
16  Debtors' businesses and would be difficult to replace for a considerable period of time.
17  Accordingly, a loss of a significant number of the Debtors' employees would cause severe
18  disruption, and perhaps irreparable damage, to the Debtors' businesses.
19          Based upon the foregoing, it is essential that the Debtors preserve their workforce.  In order
20  for the Debtors to do so, the Debtors need to be able to obtain from this Court authority to pay the
21  pre-petition wage and employment-related claims of their employees.  Good cause exists,
22  therefore, for this Court to consider this Motion on an emergency basis.
23                                      III.
24                      **THE PROPOSED PAYMENTS ARE AUTHORIZED**
25                      **UNDER THE "NECESSITY OF PAYMENT" DOCTRINE**
26          A debtor's ability to pay the reasonable ongoing expenses of its operations in the ordinary
27  course and to maintain its current employees is critical to the debtor's reorganization prospects.
28

MAINDOCS-#157618-v2-Forbco_Payroll_Motion.DOC

Unless a debtor is able to preserve its workforce, its efforts to reorganize its financial affairs will be greatly impaired.

In recognition of a debtor's need to pay expenses, such as pre-petition payroll expenses, that are indispensable to the debtor's maintaining its operations in the ordinary course, bankruptcy courts routinely consent to a debtor's paying such expenses under the "necessity of payment" doctrine. The United States Supreme Court first articulated the "necessity of payment doctrine" over a century ago in a railroad bankruptcy case when it stated that "[m]any circumstances may exist which may make it *necessary and indispensable to the business* of the road and the preservation of the property, for the receiver to pay pre-existing debts. . . ." Miltenberger v. Logansport, 1 S.Ct. 140 (1882) (emphasis added). While this doctrine was not codified in the Bankruptcy Code, in general, bankruptcy courts have used their equitable power under Section 105(a) of the Bankruptcy Code to authorize the payment of pre-petition claims where such payment is deemed necessary to the continued operations of a debtor in a Chapter 11 reorganization case. In re Ionosphere Clubs, Inc. and Eastern Airlines, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) ("This ['necessity of payment'] rule recognizes the existence of the judicial power to authorize the debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor."); In re Lehigh & New England Railway Co., 657 F.2d 570, 581 (3rd Cir. 1981) (bankruptcy court may authorize payment of pre-petition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); In re Penn Central Transportation, Co., 467 F.2d 100, 102 n.1 (3rd Cir. 1972) (necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); In re Columbia Gas Systems, Inc., 171 B.R. 189, 191-92 (Bankr.D.Del.1994) (authorizing debtor to pay pre-petition claims that are essential to continued operation of business); In re Just For Feet, Inc., 242 B.R. 821, 826 (D.Del. 1999) (authorizing payment of critical vendor pre-petition claims because the vendors were "essential to the survival of the debtor."); In re Financial News Network, Inc., 134 B.R. 732, 736 (Bankr.S.D.N.Y.1991); In re NVR L.P., 147 B.R. 126, 128 (Bankr.E.D.Va.1992); In re Eagle-Pircher Indus., Inc., 124 B.R.

1021, 1023 (Bankr. S.D.Ohio 1991); In re Texlon Corporation, 596 F.2d 1092 (2nd Cir.1979); In re Adams Apple, Inc., 829 F.2d 1484, 1490 (9th Cir.1987); Duley v. Mealey, 147 F.2d 268 (2nd Cir. 1945). Cf, Matter of Oxford Management, Inc., 4 F.3d 1329 (5th Cir. 1993); In re Timberhouse Post and Beam, Ltd., 196 B.R. 547 (Bankr. D.Mont. 1996); and In re USM Technology Corp., 158 B.R. 821, 827 n.9 (Bankr.N.D.Cal.1993).

The rationale of the "necessity of payment" doctrine is particularly important where the pre-petition claims involve pre-petition wages and benefits. In the case, In re Gulf Air, 112 B.R. 152, 153 (Bankr. W.D. La. 1989), a Chapter 11 debtor moved for immediate payment of pre-petition employee related expenses which included wages, health and life insurance premiums and workers' compensation premiums. Id. at 153. The debtor had advised the Gulf Air court that many of the debtor's employees would abandon employment without such immediate payment and that therefore such payment was essential to the debtor's reorganization effort. Id. The Gulf Air court noted that, while pre-petition claims are normally disposed of in a plan of reorganization and in accordance with statutory priorities, "there are well established 'necessity of payment' and similar exceptions." Id. Finding that payment of pre-petition wage and benefit obligations was in the best interests of creditors and necessary for the successful reorganization of the debtor, the Gulf Air court granted the debtor's motion in its entirety. See also, In re Adams Apple, Inc., 829 F.2d 1484, 1490 (9th Cir. 1987) ("cases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation in such context as (i) pre-petition wages to key employees…"); Matter of Canton Castings, Inc., 103 B.R. 874 (Bankr. N.D. Ohio 1989) (debtor was bound by collective bargaining agreement to pay accrued vacation pay).

In addition to the foregoing decisional authority, this Court is empowered under the provisions of Section 105(a) of the Bankruptcy Code to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). See also, In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("A general practice has developed, however, where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. §105, where the debtor will be unable to reorganize without such payment.").

The Debtors respectfully submit that, under the circumstances of this case, the necessity of payment doctrine provides sufficient legal support for payment of the pre-petition wages and benefits of the Debtors' employees, as requested in this Motion.

## IV.
## THE PAYMENTS IN QUESTION
## REPRESENT PAYMENT OF PRIORITY CLAIMS

The payments in question all constitute payments of priority claims pursuant to Section 507(a)(4) of the Bankruptcy Code, and are therefore very likely to be paid in full pursuant to a Chapter 11 in this case. See, 11 U.S.C. § 1129(a)(9)(B). As stated hereinabove, the Debtors request authority to honor, but not to make payments on account of, pre-petition vacation claims and other benefit claims asserted by employees. The Debtors will make no payments on account of pre-petition obligations in excess of the $11,725 statutory prior limit.

Since all priority payments must be made eventually before general unsecured claims can be paid, courts often permit the payment of pre-petition wages so that the debtor-in-possession may maintain an effective workforce, especially where the amount of the payment is relatively small and where it appears that the wages being paid would ultimately qualify as priority claims. In re Quality Interiors, Inc., supra, at 396. The Debtors believe that the pre-petition priority wage claims of employees will be paid by the Debtors' estates in any event. Consequently, there is ample authority and legal justification for authorizing the Debtors to pay the pre-petition priority wage claims of the Debtors' employees and to honor, in the ordinary course of the Debtors' post-petition operations, the Debtors' benefit policies for employees.

## V.
## THE DEBTORS SHOULD BE AUTHORIZED TO MAINTAIN,
## FOR A LIMITED PERIOD OF TIME, THE PAYROLL ACCOUNT
## FROM WHICH PRE-PETITION PAYROLL CHECKS WERE FUNDED

In order to ensure that all of the prepetition payroll checks that were issued to employees are honored, the Debtors seek authority to maintain the bank accounts relating to these obligations for a period of fifteen days after the Petition Date. Without this relief, employee checks may be

-8-

1 | rejected, resulting in an immediate loss of employees and consequent damage to the Debtors'
2 | business operations.

## VI.

## CONCLUSION

Based upon the foregoing, the Debtors respectfully submit that good cause exists for the Court to grant to the Debtors the relief herein requested and such other and further relief that may be just and appropriate under the facts and circumstances of these cases.

DATED: February 9, 2011

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

By: */s/ Robert E. Opera*
    Robert E. Opera
    Kavita Gupta
[Proposed] General Insolvency Counsel for
Debtors and Debtors-in-Possession

-9-