1 | ROBERT E. OPERA -- State Bar No. 101182
ropera@winthropcouchot.com
2 | KAVITA GUPTA – State Bar No. 138505
3 | kgupta@winthropcouchot.com
**WINTHROP COUCHOT**
4 | **PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
5 | Newport Beach, CA 92660
Telephone: (949) 720-4100
6 | Facsimile: (949) 720-4111

7

[Proposed] General Insolvency Counsel for
8 | Debtors and Debtors-in-Possession

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **SANTA ANA DIVISION**

12

13 | In re:                                                Case No. 8:11-bk-11428 RK

14 | ☒ FORBCO MANAGEMENT                    (Jointly Administered with
 CORPORATION, a California          Case Nos. 8:11-bk-11439 RK;
15 | corporation,                                     8:11-bk-11442 RK; and 8:11-bk-11444 RK )
16 | ☒ FORBCO SIZZLER PARTNERS, L.P.,
 a California limited partnership,      Chapter 11 Proceedings
17 | ☒ W & J HIGGINS INVESTMENTS L.P.,
 a California limited Partnership,     **DEBTORS' EMERGENCY MOTION FOR**
18 | ☒ L & G RESTAURANTS, LLC,          **ORDER (A) PROHIBITING UTILITY**
19 | a California limited liability company,  **PROVIDERS FROM ALTERING, REFUSING**
                                                                    **OR DISCONTINUING SERVICE,**
20 |           Debtors and                             **(B) DEEMING UTILITIES ADEQUATELY**
              Debtors-in-Possession.              **ASSURED OF FUTURE PERFORMANCE,**
21 |                                                              **AND (C) SETTING PROCEDURES FOR**
                                                                    **DETERMINING ADEQUATE ASSURANCE**
22 |                                                              **OF PAYMENT UNDER SECTION 366 OF**
23 |                                                              **THE BANKRUPTCY CODE**

24 |                                                              [DECLARATION OF RONALD JEFFREY
                                                                    HIGGINS IN SUPPORT THEREOF FILED
25 |                                                              CONCURRENTLY HEREWITH]

26
                                                                    DATE:     February 11, 2011
27 |                                                              TIME:      9:30 a.m.
                                                                    PLACE:   Courtroom 5D
28

Forbco Management Corporation ("Management"); Forbco Sizzler Partners, LP, a California limited partnership ("Forbco Sizzler"); W & J Investments, LP, a California limited partnership ("W & J"); and L & J Investments, LP, a California limited partnership ("L & J"), the jointly administered debtors and debtors-in-possession in the above Chapter 11 proceedings (collectively, the "Debtors"), hereby move the Court, <u>on an emergency basis</u>, for an order granting the following relief:

       A)    Prohibiting utilities from altering, refusing or discontinuing service to the Debtors;

       B)    Deeming the utilities adequately assured of future performance based upon the receipt of a deposit equal to one-half of month's usage, with this being calculated based upon the applicable Debtors' most recent monthly bill, if a deposit in this amount is not already held by such utilities. If a deposit equal to this sum is already on deposit with the utilities, then no additional adequate assurance payment is required;

       C)    Providing that any utility that seeks to contest this order is only authorized to do so in compliance with the Adequate Assurance Procedures as that term is described and defined herein; and

       D)    Such further relief as the Court deems just and proper.

This Motion is made and based upon the within Memorandum of Points and Authorities, the Declaration of Jeffrey Higgins (the "Higgins Declaration") filed concurrently herewith, the papers, pleadings and other documents on file in the Debtors' Chapter 11 cases, and upon such other evidence, both oral and documentary, that may be submitted to the Court at or before the time of the hearing on this Motion.

DATED: February 9, 2011                      Winthrop Couchot
                                                 Professional Corporation

                                            By:  /s/ Robert E. Opera
                                                    Robert E. Opera, attorneys for
                                                    the Debtor and Debtor-in-Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

## STATEMENT OF FACTS

**A.  Description of the Debtors.** The Debtors own and operate fourteen (14) Sizzler restaurants in Southern California. Each Debtor owns four restaurants, with the exception of L&G, which owns two restaurants. The Debtors' business affairs are administered, in part, by Forbco Management, which was founded by Ronald F. Higgins in 1972, and which is now owned and controlled by him and his son, Ronald Jeffrey Higgins, who serves as Forbco Management's President. A description of the Debtors is set forth in the following subparagraphs.

1.  **Forbco Management.** Forbco Management operates Sizzler restaurants from the following leased locations:

| Store No. 3  | 730 S. Arroyo Parkway, Pasadena, CA 91105 |
| Store No. 12 | 900 N. Citrus Avenue, Covina, CA 91722 |
| Store No. 14 | 9480 Warner Avenue, Fountain Valley, CA 92708 |
| Store No. 15 | 2228 S. Mountain Avenue, Ontario, CA 91761 |

In addition to these operating locations, Forbco Management leases office space for its headquarters facility that is located at 27121 Towne Centre Drive, Suite 250, Foothill Ranch, CA 92610-2806.

Forbco Management generated approximately $194,000 in earnings before interest, depreciation and amortization ("EBITDA"), on revenues of approximately $5.0 million, during the twelve month period ending on December 26, 2010. The company employs approximately 110 people in the ordinary course of its business.

2.  **Forbco Sizzler.** Forbco Management operates Sizzler restaurants from the following leased locations:

| Store No. 24 | 101 N. Village Court, San Dimas, CA 91733 |
| Store No. 25 | 9588 Baseline Road, Rancho Cucamonga, CA 91701 |
| Store No. 30 | 6631 Clay Street, Pedley, CA 92509 |
| Store No. 37 | 900 E. Alosta Avenue, Azusa, CA 91702 |

Forbco Sizzler generated approximately $124,000 in EBITDA, on revenues of approximately $5.4 million, during the twelve month period ending on December 26, 2010. Financial statements for Forbco Sizzler are attached, collectively, as Exhibit "2" to the Higgins Declaration. The company employs approximately 110 people in the ordinary course of its business.

3. **W&J**. W&J operates Sizzler restaurants from the following leased locations:

| Store No. 102 | 15 West Del Amo Blvd., Long Beach, CA 90805 |
| Store No. 105 | 20755 South Avalon Blvd., Carson, CA 90746 |
| Store No. 108 | 33002 Yucaipa Blvd., Yucaipa, CA 92399 |
| Store No. 135 | 1461 South Rimpau Corona, CA 92879 |

W&J generated approximately $232,000 in EBITDA, on revenues of $4.8 million, during the twelve month period ending on December 26, 2010. Financial statements for W&J are attached, collectively, as Exhibit "3" to the Higgins Declaration. The company employs approximately 110 people in the ordinary course of its business.

4. **L&G**. L&G operates Sizzler restaurants from the following leased locations:

| Store No. 205 | 3755 Murphy Canyon Road, San Diego, CA 92123 |
| Store No. 225 | 4017 E. Main Street, Ventura, CA 90003 |

L&G generated approximately $106,000 in EBITDA, on revenues of $2.7 million, during the twelve month period ending on December 26, 2010. Financial statements for L&G are attached, collectively, as Exhibit "4" to the Higgins Declaration. The company employs approximately 60 people in the ordinary course of its business.

B. **Events Precipitating Debtors' Chapter 11 Filings**. The Debtors' financial difficulties have their roots in the sudden and severe downturn in the United States economy beginning in mid-year 2007. As a result of this downturn, sales revenues during the July 2007 through 2008 time frame declined, on average, more than 15%. This reduction in revenues, coupled with the costs that the Debtors incurred in litigation their franchisor, caused severe cash

flow problems and substantial third party payment arrearages. The instant Chapter 11 filing will provide the Debtors a breathing spell within which to propose a reorganization plan, while concurrently enabling the Debtors to preserve the going concern value of their business operations.

## II

## THE ADEQUATE ASSURANCE PROCEDURES.

In order to provide a future means for any affected Utility Provider to seek relief from this Court based upon the contention that future payment is not adequately assured, the Debtors are proposing the following procedural recourse (the "Adequate Assurance Procedure"):

1. absent further order of this Court and except as otherwise provided herein, the Utility Providers may not alter, refuse or discontinue service to, or discriminate against, the Debtors on account of the commencement of these chapter 11 cases or any unpaid pre-petition charges, or request payment of a deposit or receipt of other security in connection with any unpaid pre-petition charges, except as provided for herein;

2. the Debtors will serve the Motion and an order granting the Motion on an interim basis, if granted by the Court, via first-class mail, within three (3) business days after the date that the order is entered by the Court, on all Utility Providers identified on Exhibit "7" to the Higgins Declaration; provided that for any Utility Provider that may have been omitted from Exhibit "7", the Debtors shall have the right to supplement such list of Utility Providers and shall promptly provide notice of the order upon learning of such Utility Provider;

3. a Utility Provider may request assurance of payment within thirty (30) days after the Petition Date (an "Assurance Request") by submitting an Assurance Request to (i) Winthrop Couchot, P.C., 660 Newport Center Drive, Suite 400, Newport Beach, California 92660, Attn: P.J. Marksbury;

4. any Assurance Request must (i) be made in writing and (ii) include a summary of the Debtors' payment history relevant to the affected account(s);

5. if a Utility Provider makes a timely Assurance Request that the Debtors believe is reasonable, then the Debtors shall be authorized in their sole discretion to comply with such request without further order of the Court;

6. if the Debtors believe the Assurance Request is unreasonable, the Debtors will schedule a hearing to determine if assurance to such Utility Provider is necessary (the "Determination Hearing");

7. pending resolution of that issue at any such Determination Hearing, any Utility Provider making an Assurance Request shall be prohibited from altering, refusing or discontinuing service to the Debtors; and

8. a Utility Provider shall be deemed to have adequate assurance of payment unless and until a future order of this Court is entered requiring further adequate assurance of payment.

Although the Debtors believe that the list of Utility Providers attached as Exhibit "7" to the Higgins Declaration is a complete list, the Debtors reserve the right, without further order of the Court, to supplement the list if any Utility Provider has been inadvertently omitted. If the Debtors supplement the list subsequent to the filing of this Motion, the Debtors will promptly serve a copy of this Motion, and the signed Order, on any Utility Provider that is added to the list by such a supplement. Concurrently with such service, the Debtors will file with the Court a supplement to Exhibit "7" to the Declaration adding the name of the Utility Provider so served. Such an added Utility Provider shall have thirty (30) days from the date of service of this Motion and the order to make an Assurance Request. If such an Assurance Request is made, the Debtors shall abide by the procedures set forth above, as applicable. Pending resolution of any Determination Hearing relating to an Assurance Request, the Debtors may seek an order prohibiting any such Utility Provider from altering, refusing or discontinuing utility services to the Debtors.

# III

## BASIS FOR RELIEF UNDER SECTION 366 OF THE BANKRUPTCY CODE

Section 366(a) of the Bankruptcy Code protects a debtor against the immediate termination of utility services after it files for bankruptcy. Pursuant to this section, a utility may not, during the first twenty (20) days of the case, alter, refuse, or discontinue services to a debtor in a chapter 11 case solely because of unpaid pre-petition amounts. However, the utility may subsequently do so unless the debtor (as the Debtors are doing pursuant to this Motion) furnishes "adequate assurance" of payment, in the form of a deposit or otherwise, for post-petition services in a form "satisfactory" to the utility within 30 days of the Petition Date.[1]

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, courts, commentators, and legislative history had all confirmed that section 366 does not require, in every case, that the debtor provide a deposit or other security to its utilities as adequate assurance of payment. In <u>Virginia Electric & Power Co. v. Caldor, Inc.</u>, 117 F.3d 646, 648-49 (2d Cir. 1997), the United States Court of Appeals for the Second Circuit affirmed the bankruptcy court's ruling that the debtor's pre-petition payment history, its post-petition liquidity, and the administrative expenses afforded post-petition invoices constituted adequate assurance of future performance. <u>See also</u> <u>In re Pacific Gas & Elec. Co.</u>, 271 B.R. 626, 644-45 (N.D. Cal. 2002)

---

[1] Section 366 states in pertinent part:

> (a) Except as provided in subsection (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
> (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.
> ***
> (c)(2) subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.
> (3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

11 U.S.C. § 366.

-6-

(upholding the bankruptcy court's finding that the debtor's likelihood of performance and availability of resources provided adequate assurance); Shirley v. Philadelphia Elec. Co. (In re Shirley), 25 B.R. 247, 249 (Bankr. E.D. Pa. 1982) ("section 366(b) ... does not permit a utility to request adequate assurance of payment for continued services unless there has been a default by the debtor on a pre-petition debt owed for services rendered").

Under the present version of Section 366(c) of the Bankruptcy Code, however, in a chapter 11 case, a utility company may alter, refuse, or discontinue utility service if within 30 days after the commencement of the chapter 11 case, the utility company does not receive adequate assurance in a form that is "satisfactory" to the utility company, subject to the Court's ability to modify the amount of adequate assurance. Further, under section 366(c), in making a determination of whether an assurance of payment is adequate, the Court may not consider (i) the absence of security before the petition date, (ii) the debtor's history of timely payment or (iii) the availability of an administrative expense priority to the utility company.

While the *form* of adequate assurance of payment may be limited under new subsection 366(c) to the types of security enumerated in subsection 366(c)(1)(A), **the amount of the deposit or other form of security remains fully within the reasonable discretion of the Court.**[2] It has been well established that the requirement that a utility receive adequate assurance of payment does not require a guarantee of payment. Instead, the protection granted to a utility is intended to avoid exposing the utility to an unreasonable risk of nonpayment. In Adelphia Business Solutions, Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002), the Bankruptcy Court for the Southern District of New York stated that "[i]n determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guaranty of payment, but must only determine that the utility is not subject to an unreasonable risk of nonpayment for post-petition services." The essence of the Court's inquiry is an examination of the totality of the

---

[2] 11 U.S.C. § 366(b) provides: "On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment."

Similarly, 11 U.S.C. § 366(3)(A) provides: "On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2)."

circumstances in making an informed judgment as to whether utilities will be subject to an unreasonable risk of nonpayment. Id. at 82-83. See also In re Magnesium Corp. of America, 278 B.R. 698, 714 (Bankr. S.D.N.Y. 2002) ("In deciding what constitutes adequate assurance in a given case, a bankruptcy court must focus upon the need of the utility for assurance, and to require that the debtor supply no more that than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources."); 9B Am. Jur. 2d Bankruptcy § 1788 (2005).

Here, the Debtors propose to protect the Utility Providers further by providing a one-half month deposit, where such a deposit is not already held, and by establishing the Adequate Assurance Procedures provided for herein, pursuant to which any Utility Provider can request adequate assurance in the event that it believes there are facts and circumstances with respect to its providing post-petition services to the Debtors that would merit greater protection.

As set forth above, the Debtors cannot continue to operate without continued utility services. If any of the Utility Providers alter, refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted. Such disruption could have a devastating impact on the Debtors' going concern value and ability to reorganize. In contrast, the Utility Providers will not be prejudiced by the continuation of their services and will be paid all post-petition utility charges. It is therefore critical that utility services continue uninterrupted.

This Court also has the authority to grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code which provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of section 105(a) is "to assure the bankruptcy court[']s power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 COLLIER ON BANKRUPTCY ¶ 105.01, at 105-5 to 105-6 (15th rev. ed. 2001). Because the proposed Procedures protect the Debtors and the Utility Providers, they carry out section 366 in a manner fully consistent therewith and are an appropriate exercise of this Court's authority under Section 105(a) of the Bankruptcy Code.

## IV

## THE RELIEF REQUESTED HEREBY IS
## JUSTIFIED ON AN EMERGENCY BASIS

Rule 9006(c)(1) of the Federal Rules of Bankruptcy Procedure provides that, for "cause shown," a bankruptcy court may reduce the time periods provided for service in the Bankruptcy Rules, except as to the time periods provided in Rule 9006(c)(2). Since the time period at issue in this Motion is not one of those listed in Rule 9006(c)(2), this Court has the power to grant the relief prayed for herein on an "emergency" basis. As set forth in detail in the Higgins Declaration, cause exists for authorizing the relief requested herein on an emergency basis.

## V

## THE NOTICE GIVEN OF THIS MOTION IS APPROPRIATE
## UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE

The Debtors have served a copy of this Motion on all secured creditors, the unsecured creditors holding the 20 largest claims against the Debtors and the Office of the United States Trustee. The Debtors respectfully submit that such notice is appropriate and comports with the requirements of the Federal Rules of Bankruptcy Procedure ("FRBP") and the Local Bankruptcy Rules ("LBR"). See, Rule 2002 of the FRBP; Rule 9006(c) of the FRBP; Rule 9075-1(a) of the LBR.

## VI

## CONCLUSION

Based upon the foregoing, the Debtors would respectfully request that the Court entered its order granting the relief requested herein, and granting to the Debtors such other and further relief as is just and appropriate under the circumstances of this case.

DATED: February 9, 2011

Winthrop Couchot
Professional Corporation

By: /s/ Robert E. Opera
Robert E. Opera, attorneys for
the Debtor and Debtor-in-Possession